## 33236. DEPARTMENT OF NATURAL RESOURCES v. JOYNER.

BOWLES, Justice.

Certiorari was granted in this case to decide the important question of what line in the ocean off the coast of Georgia constitutes the seaward boundary of the salt waters of this state.

This matter was initiated by a claim filed by Joyner in the State Court of Glynn County, Georgia, seeking the return of $2,166.90 deposited with the clerk of that court, representing the amount of money realized from the sale of shrimp confiscated from Joyner's commercial shrimping vessel by conservation rangers of the Department of Natural Resources. Joyner had been engaged in commercial shrimping, which under Code Ann. § 45-905 was prohibited in the tidal or salt waters of the state during proscribed months, including the month of May. The case was tried and the jury returned a verdict in favor of Joyner.

On appeal, the state enumerated as error the trial court's instruction to the jury as to what constituted waters closed to commercial shrimping, and its refusal to charge the jury, "I charge you that the general rule is that a person engages in the commercial taking of shrimp with power drawn nets in the tidal or salt waters of this state, if

at the time of such taking of shrimp the person's vessel is located at any point within three nautical miles seaward of the low water line along the coast. However, I further charge you that a different rule applies where there is a low tide elevation situated within three nautical miles seaward of the low water line along the coast. In this second case, a person engages in the commercial taking of shrimp with power drawn nets in the tidal or salt waters of this state, if at the time of such taking of shrimp the person's vessel is located at a point within three nautical miles seaward of the low water line of such low tide elevation."

The Court of Appeals upheld the trial court's charge as given, deciding that the state can measure its three-mile limit from low-tide elevations only if there are lighthouses or similarly permanent visible installations above sea level built upon them. As there was no evidence that Joyner had been fishing in an area near low-tide elevations with conforming structures built upon them, the court found no error in refusing the requested charge and in charging only the general rule that the salt waters of this state extend from the mean low water mark of the foreshore three nautical miles offshore. We reverse.

In United States v. California, 381 U. S. 139, 165 (1965), the United States Supreme Court ruled that the definitions and rules set forth in the Convention on the Territorial Sea and Contiguous Zone (TIAS No. 5639) apply for purposes of delineating a state's coastline. Article 3 of that convention provides: *"Except where otherwise provided* in these articles, the normal baseline for measuring the breadth of the territorial sea is the low-water line along the coast. . ."* (Emphasis supplied.) One very important exception to this general rule is found in Article 11 of the convention, which provides: "Where a low-tide elevation is situated wholly or partly at a distance not exceeding the breadth of the territorial sea from the mainland or island, the low-water line on that elevation may be used as the baseline for measuring the breadth of the territorial sea."

Article 11 therefore provides that where a low-tide elevation happens to be situated within the three mile limit as generally determined pursuant to Article 3, the

low-water line of the low-tide elevation is the state's baseline or coastline.

Georgia's boundary statute (Code Ann. § 15-101) provides that the state's boundary extends three geographical miles from the ordinary low water mark "along those portions of the coast and coastal islands in direct contact with the open sea or three geographical miles from the line marking the seaward limit of inland waters." This statute, adopted pursuant to federal law, is consistent with and should be construed in accordance with the decision of United States v. California, supra, to delineate the state's coastline by applying the rules and definitions set forth in the Convention on the Territorial Sea and Contiguous Zone.

Therefore, we hold that the salt waters of this state extend from the mean low water mark of the foreshore three geographical miles offshore; except where a low tide elevation is situated within three nautical miles seaward of the low water line along the coast, the state's three mile boundary is measured from such low tide elevation. During the presentation of its case, the state introduced into evidence a map showing certain low tide elevations in the vicinity in which Joyner was fishing on the day in question. In his testimony, Joyner acknowledged the existence of these elevations although he was not sure how often these elevations were actually exposed. We find that this was sufficient evidence of low tide elevations so as to authorize the state's requested charge. Accordingly, we reverse the Court of Appeals and remand the case for a new trial.

*Judgment reversed. All the Justices concur.*

ARGUED APRIL 10, 1978 — DECIDED MAY 16, 1978 — REHEARING DENIED JUNE 9, 1978.

*Arthur K. Bolton, Attorney General, Robert E. Hall, Special Assistant Attorney General,* for appellant.
*Jack S. Hutto,* for appellee.